13 N.J. Super. 445 (1951)
80 A.2d 647
MURIEL BRYER DANDREA, PLAINTIFF-RESPONDENT,
v.
NATALE CENTOFANTE AND SUSIE CENTOFANTE, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued April 16, 1951.
Decided April 19, 1951.
*446 Before Judges McGEEHAN, JAYNE and WM. J. BRENNAN, JR.
Mr. Dominick F. Pachella argued the cause for appellants (Mr. J. Chester Massinger, attorney).
Mr. John E. Selser argued the cause for respondent (Messrs. Selser & Shenier, attorneys).
The opinion of the court was delivered PER CURIAM.
The plaintiff-respondent in conformity with the verdict of the jury has a judgment against the appellants in the sum of $15,000 awarded to her for the bodily injuries, consequential losses sustained, and expenses incurred by her as a result of an automobile collision which occurred shortly *447 after 12 o'clock on the morning of November 21, 1949, at the intersection of Knickerbocker Road and Hudson Avenue in the City of Englewood, Bergen County.
The application of the defendants for a new trial was denied by the trial judge, and the only question introduced for consideration by the present appeal pertains to the alleged excessiveness of the damages awarded to the respondent by the jury. Her pecuniary losses and expenses amounting in the aggregate to $1,750 are not in controversy, although there is some proof that the total losses of earnings and expenses amounted to $2,027.
The admeasurement of compensatory damages in actions for the injurious consequences of personal torts is not gauged by any established graduated scale. In our procedure the appraisal is entrusted to the sound discretion of the jury. Thus it has long been the practice of our courts to refrain from interfering with a verdict on the mere ground of excessive damages unless the award is manifestly unsupported by the evidence and obviously unjust. Vreeland v. Berry, 21 N.J.L. 183, 187 (Sup. Ct. 1847); Salvato v. N.J. Asphalt & Paving Co., 135 N.J.L. 185, 189 (E. & A. 1947).
And then, too, "In these days of the high cost of living and consequent decrease in the purchasing power of the dollar, one cannot well overlook or ignore the effect of such economic conditions when called upon to determine, as the jury did here, the amount of damages that would fairly and reasonably compensate one for his pain and suffering and disability proximately caused by another's negligence." Nusser v. United Parcel Service of N.Y., Inc., 3 N.J. Super. 64, 69 (App. Div. 1949). Certainly an inordinately exorbitant allowance of damages cannot be permitted to stand.
The injuries suffered by the plaintiff were relatively severe. She received a concussion of the brain of sufficient intensity to render her in a state of semi-consciousness for several days. Plasma was furnished. The fracture of the femur of her right leg was complete and so comminuted as to require an *448 open surgical operation to accomplish its reduction. The use of a metal plate with seven screws was required. The injured limb was encased in a cast which extended from her foot to above her waist, immobilizing her body in a supine position until March 2, 1950. Until the removal of the cast on March 2, 1950, she experienced constant pain in her fractured leg. The concussion as it abated caused a temporary dizziness.
Additionally, some of her teeth were loosened; there were lacerations on the inside of her lower lip and on her head. She was confined in the hospital until December 18, 1949. Eventually she was able at home to move about with the aid of crutches and cane until her substantial recovery on April 20, 1950.
The injurious consequences of a permanent character are some impairment of memory, some atrophy of the muscles of the right leg causing a slight limp and producing an estimated disability of 15 per cent in the normal use of the limb, and the scars resulting from the surgical operation on her leg and from the lacerations of the lip and head. The scars on the head are concealed by her hair. The scar on her leg is approximately eight inches in length. The scar tissue on the inside of her lower lip has taken the form of a lump.
Our independent review of the record has been made with due regard to the denial by the trial judge of the defendants' motion for a new trial and to the opportunity of the trial court and the jury to pass upon the credibility of the witnesses.
It does not clearly and convincingly appear that the verdict returned by the jury was the result of mistake, partiality, prejudice, or passion. Gelsmine v. Vignale, 11 N.J. Super. 481, 487 (App. Div. 1951).
Affirmed.