194 N.J. Super. 580 (1984)
477 A.2d 439
ANN MADEJ AND EDWARD MADEJ, HER HUSBAND, PLAINTIFFS,
v.
JOHN DOE (A FICTITIOUS PERSON TRADING AS JOHN'S TEXAS WEINERS), RICHARD ROE (A FICTITIOUS PERSON), FIGOLIA INC. CORPORATION, LIGHTING ELECTRIC COMPANY, CITY OF NEWARK, COUNTY OF ESSEX, STATE OF NEW JERSEY AND THE "X" INC. CORPORATION, A FICTITIOUS NEW JERSEY CORPORATION, DEFENDANTS.
Superior Court of New Jersey, Law Division Essex County.
Decided January 27, 1984.
*581 Allan Serratelli for plaintiffs Ann Madej and Edward Madej.
*582 Abilio Mendez for defendant City of Newark (John J. Teare, Corporation Counsel of the City of Newark, attorney).
Madeleine W. Mansier, for defendant State of New Jersey (Irwin I. Kimmelman, Attorney General of the State of New Jersey, attorney).
Vincent R. Glorisi for defendant Figolia Inc. Corporation (Hoagland, Longo, Oropollo & Moran, attorneys).
VILLANUEVA, J.S.C.
This is a motion for summary judgment by defendant, State of New Jersey, to dismiss the complaint and all cross-claims brought against it and a motion for summary judgment by defendant, City of Newark, to dismiss a per quod claim against it. The issues are whether a notice of claim "against the City of Newark" that makes no mention of the State, which is served both upon the City and the State, constitutes a valid notice of claim against the State and whether a notice of claim must be filed by a spouse of the injured claimant for the spouse to recover a per quod claim.
This action arises out of an alleged slip and fall on a sidewalk in Newark by plaintiff Ann Madej, and subsequent injuries allegedly suffered by her due to the fall. In the complaint, plaintiff is joined by her husband, Edward Madej, as plaintiffs against the City of Newark, County of Essex, State of New Jersey, Figolia Inc. Corporation and other defendants, alleging negligent maintenance of the sidewalk. The only defendant that has answered is the State.
A notice of claim was duly filed by plaintiff Ann Madej against the City on December 9, 1981, within the 90 days required by law. N.J.S.A. 59:8-8. In response to the question on the form notice of claim requesting the name and address of each State agency and each State employer who caused the claimant's damages or injuries, plaintiff Ann Madej stated:
City of Newark and/or its representatives, agents, servants and/or employees responsible for construction and/or maintenance of the new sidewalk at the *583 premises known as John's Texas Weiners, a commercial establishment corner of Washington Street & Branford Place, Newark, New Jersey.
No notice of claim was ever filed by plaintiff Edward Madej nor was his name ever mentioned as being the husband of plaintiff Ann Madej until the complaint was filed in this matter on September 30, 1983.
The attorney for Ann Madej, by correspondence dated November 29, 1981, which was received on December 10, 1981, sent the State what appears to be a copy of the notice of claim filed with the City. The Attorney General by a letter dated January 29, 1982, responded to this correspondence by stating:
A review of your notice indicates quite clearly that the claim is against a local public entity and does not involve the State of New Jersey or any of its agencies.
There is no need to put the Attorney General on notice relative to this claim or correspond with this office.
The only time the State of New Jersey or the Attorney General's office is involved in claims under the New Jersey Tort Claims Act is when a claim is being made against the State, one of its agencies or a State employee. May we refer you to the definition of State, which is contained in N.J.S.A. 59:1-3.
The attorney for plaintiff never responded to this letter from the Attorney General.
The City opposes the State's motion, except as it relates to the per quod claim. Defendant Figolia Inc. Corporation objects to the State's motion that seeks to have "all cross-claims dismissed against it with prejudice." Plaintiffs have filed no opposing papers.

PER QUOD CLAIM
Both the State and the City contend that the plaintiff Edward Madej failed to comply with the notice provisions of the Tort Claims Act, as he did not file a separate per quod notice of claim. Their contention is that Edward Madej failed to file a notice of claim separate and apart from his wife's claim (nor was his name mentioned in his wife's claim), and that a husband claiming a loss of consortium and expenses, incurred as a result *584 of his wife's injury, must sue in his own right and not in his wife's. Kimpel v. Moon, 113 N.J.L. 220, 222 (Sup.Ct. 1934); Goodman v. Mead Johnson & Co., 534 F.2d 566 (3 Cir.1976).
In the latter case, it was stated:
(a)lthough it is dependent upon an actionable wrong having been committed against his wife, a husband's per quod claim is independent from and not derivative of her personal injury claim. [Id. at 574]
Since it is a separate claim, a notice of claim on behalf of each claimant must be filed.
This issue has been considered by California courts. Since the New Jersey Tort Claims Act was patterned after the California Tort Claims Act of 1963, reference to California precedents is appropriate. Kleinke v. Ocean City, 147 N.J. Super. 575, 579 (App.Div. 1977).
In Shelton v. Superior Ct., in and for Cty. of Santa Clara, 56 Cal. App.3d 66, 128 Cal. Rptr. 454 (Ct.App. 1976), the court affirmed the trial court's denial of plaintiffs' application to amend their complaint to assert a cause of action for loss of consortium. Such a cause of action was first recognized in California in Rodriquez v. Bethlehem Steel Corp., 12 Cal.3d 382, 525 P.2d 669, 115 Cal. Rptr. 765 (Sup.Ct. 1974). The court decided that the amendment was barred by the applicable statute of limitations. The court found that, although the husband's claim was in a sense derivative, in that it did not arise until the wife suffered personal injury, it was in fact a separate and independent loss. The court found that the claim was a personal claim to the husband. Since the claim was made against the State, the court also found it was barred by the husband's failure to file the appropriate notice of claim.
The petitioners argued that the filing of the personal injury claim put the public entity on notice and satisfied the requirements of the statute. The court disagreed, noting that, "[i]t is not the purpose of the claims statutes to prevent surprise. Rather, the purpose of these statutes is to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the *585 expense of litigation." The court also found that the wife's claim for personal injuries would not support the claim of her husband. The new cause of action could not "piggyback" on the old. The court noted that what was involved was an attempt to assert liability on a different set of facts, rather than to merely assert a new theory.
The Court relied on prior California cases for the proposition that requirements of the statute are not satisfied by the mere fact that the governmental entity has some notice or knowledge of the accident and possible claim. See, e.g., Petersen v. Vallejo, 259 Cal. App.2d 757, 66 Cal. Rptr. 776 (Ct.App. 1968) (Filing by a widow of a notice of claim for damages as a result of the wrongful death of her husband did not satisfy the requirements of the statute insofar as daughter's claim is concerned, either individually or as administratrix of her father's estate); Roberts v. State, 39 Cal. App.3d 844, 114 Cal. Rptr. 518 (Ct.App. 1974) (Wife cannot file a complaint for wrongful death where the only notice to the local public entity is by a worker's compensation claim); Lewis v. San Francisco, 21 Cal. App.3d 339, 98 Cal. Rptr. 407 (Ct.App. 1971) (Wife's claim for personal injuries filed prior to her death is not enough to satisfy the requirements of the statute insofar as claim by the husband and daughter for wrongful death is concerned).
In Marks v. New York, 101 N.Y.S.2d 105 (Sup.Ct. 1950), the Court considered the similar question of whether a notice of claim could be amended to add a claim by a mother for loss of services of her son. The original claim was filed by the father on behalf of the son for personal injuries and on behalf of himself for medical expenses. The father subsequently abandoned the family. The mother was permitted to amend the complaint to substitute her name for that of the father on behalf of the son for his personal injuries. She was not permitted, however, to add her own claim for the loss of her son's services since that would have constituted an entirely new claim.
*586 However, in Application of Charlemagne, 277 App.Div. 689, 102 N.Y.S.2d 661 (App.Div. 1951), the Court allowed a wife to serve a late notice of claim after the expiration of the 60-day filing period, finding that the filing of the husband's per quod claim within this period constituted substantial compliance with the statute insofar as her claim was concerned. In that case, the law firm hired by the parties had prepared two notices of claim but, through inadvertence, had failed to file the wife's notice. It was the wife who had suffered personal injuries. Her husband's claim for loss of her services and for medical expenses included the wife's name and reference to her injuries and set out the particulars of the accident which caused her injuries. Under the specific circumstances of that case, the New York court held that the requirements of the statute were met.
In this case, neither the State nor the City received any information whatsoever with regard to the per quod claim. They were not even informed that Ann Madej was married. Therefore, the claim of Edward Madej is barred, and the second count of the complaint must be dismissed against both the State and the City.

CLAIMS AGAINST THE STATE OF NEW JERSEY
It is undisputed that no notice of claim was ever served upon the State notifying it that a claim was being made against it. If there was any doubt as to whether any claim was being made against the State, it was dispelled by the letter from the Attorney General dated January 29, 1982 to the attorney of Ann Madej stating that the notice received by the State clearly indicated that it was not a claim against the State or any of its agencies. Nothing further was done by the attorney in response to or as a result of this letter.
In response to the Supreme Court's abrogation of the common law doctrine of sovereign immunity from tort liability in Willis v. Cons. & Ec. Dev. Dept., 55 N.J. 534 (1970), the *587 legislature enacted the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 et seq., which reestablished such immunity absent specific provisions within the act for liability. Burg v. State, 147 N.J. Super. 316 (App.Div. 1977); English v. Newark Housing Auth., 138 N.J. Super. 425, 428-429 (App.Div. 1976). To that end, N.J.S.A. 59:1-2 states, in pertinent part:
(I)t is hereby declared to be the public policy of this State that public entities shall only be liable for their negligence within the limitations of this act and in accordance with the fair and uniform principles established herein.
Similarly, N.J.S.A. 59:2-1(a) indicates:
Except as otherwise provided by this act, a public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person.
Among the limitations of the Act is the requirement that a notice of claim must have been presented to the public entity prior to the institution of suit.
No action shall be brought against a public entity under this act unless the claim upon which it is based shall have been presented in accordance with the procedure set forth in this chapter. [N.J.S.A. 59:8-3; emphasis supplied].
Plaintiffs have used a "shotgun" approach to bring in the three public entities, City of Newark, County of Essex, and State of New Jersey, when their notice of claim only mentioned the city.
The notice of claim filed by the attorney for Ann Madej clearly was a notice of claim against the city, not a notice of claim against the State or any other public agency. It identified those who were claimed to have caused damage or injury to Ann Madej as "City of Newark and/or its representatives, agents, servants and/or employees responsible for construction and/or maintenance of the new sidewalk at the premises known as John's Texas Weiners, a commercial establishment corner of Washington Street and Branford Place, Newark, New Jersey."
The fact that the State received a copy of the notice of claim of Ann Madej against the city is of no consequence. "State" is defined in the Tort Claims Act as "the State and any office, department, division, bureau, board, commission or agency of the State, but shall not include any such entity which is statutorily *588 authorized to sue and be sued." N.J.S.A. 59:1-3. By statutory definition, then, a city does not come within the definition of state. This is made even clearer in the definition of "public entity" which "includes the State, and any county, municipality, district, public authority, public agency, and any other political subdivision or public body in the State." N.J.S.A. 59:1-3; emphasis supplied. Thus, the city and the State are each a public entity, but they are different, separate and distinguishable public entities. The city is a "local public entity." N.J.S.A. 59:8-2. Thus a notice of claim against the city is not, and cannot be, a notice of claim against the State.
The city, in its opposition papers, asserts that Ann Madej provided sufficient information for the State to investigate this matter. However, there was no claim made against the State and, therefore, nothing to investigate. Certainly, it is not incumbent upon a public entity to investigate a claim brought by an individual against a different public entity. Consequently, the State did not do an investigation. Therefore, it has been prejudiced by plaintiff Ann Madej's failure to specifically name the State as the public entity that might have caused her alleged injury.
It could not conduct an investigation until two years after the accident and has lost its opportunity to examine plaintiff's alleged injuries during that two-year period.
The city cites the case of S.E.W. Friel Co. v. N.J. Turnpike Auth., 73 N.J. 107, 122 (1977) for the proposition that the plaintiff Ann Madej should be given the opportunity to have this matter heard on the merits. That case is inapposite to the matter at hand. That case deals with the tendency of the courts to permit a plaintiff to have his case heard on the merits once it has been clearly established that the court has jurisdiction. However, in the present case, there is no jurisdiction at all. Thus, the requirement for filing a notice of claim against a public entity as a precondition to bringing suit against that same public entity is a jurisdictional requirement. If that *589 requirement has not been met, as it has not been here, the court is without jurisdiction. Pinckney v. Jersey City, 140 N.J. Super. 96, 98 (Law Div. 1976).
The claim notification requirements under N.J.S.A. 59:8-1 et seq. of the Tort Claims Act serve two purposes: (1) to allow the public entity at least six months for administrative review with the opportunity to settle meritorious claims prior to the bringing of suit, and (2) to provide the public entity with prompt notification of a claim to permit adequate investigation of the facts and the preparation of a thorough defense. Reale v. Wayne Tp., 132 N.J. Super. 100, 109 (Law Div. 1975); Marino v. Union City, 136 N.J. Super. 233, 235-236 (Law Div. 1975).
As plaintiffs failed to satisfy the notice requirements of the Act, neither of these two purposes have been met.
Since plaintiffs did not submit a claim against the State, plaintiffs cannot now bring suit against the State. N.J.S.A. 59:8-3. The filing of the complaint is not substantial compliance with the notice requirement. Lameiro v. West New York Bd. of Ed., 136 N.J. Super. 585, 587 (Law Div. 1975); Reale v. Tp. of Wayne, supra. Furthermore, since more than one year has passed since the date of the alleged accident, it is now too late for plaintiffs to seek leave of court to file a late notice of claim pursuant to N.J.S.A. 59:8-9. Therefore, the complaint against the State must be dismissed.

OBJECTION TO STATE'S MOTION TO DISMISS ALL CROSS-CLAIMS
No answering pleadings or cross-claims have been filed by any defendant other than the State. Therefore, no cross-claims can be dismissed. Even though the court has no jurisdiction over the complaint of plaintiffs, it need not decide now whether any defendants could later obtain relief against the State, either by a third party complaint or by a separate action for indemnification or contribution. See Markey v. Skog, 129 *590 N.J. Super. 192 (Law Div. 1974). Contra Cancel v. Watson, 131 N.J. Super. 320 (Law Div. 1974); but see D'Annunzio v. Wildwood Crest, 172 N.J. Super. 85, 91-92 (App.Div. 1980).